# BEFORE THE JUDICIAL PANEL
# ON MULTIDISTRICT LITIGATION

In re KAISER EMPLOYEE COVID-19
VACCINATION RELIGIOUS
ACCOMMODATION LITIGATION

MDL - _____

## BRIEF IN SUPPORT OF
## DEFENDANTS' MOTION FOR TRANSFER OF ACTIONS TO THE CENTRAL
## DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1407 FOR CONSOLIDATED
## OR COORDINATED PRETRIAL PROCEEDINGS

**Seyfarth Shaw LLP**
Christian J. Rowley (CA 187293)
Sean T. Strauss (CA 245811)
560 Mission Street, 31st Floor
San Francisco, California 94105
Telephone: (415) 397-2823
Facsimile: (415) 397-8549
crowley@seyfarth.com
sstrauss@seyfarth.com

Mark A. Wagner (UT 006353)
975 F Street, N.W.
Washington, DC 20004-1454
Telephone: (202) 463-2400
Facsimile: (202) 828-5393
mwagner@seyfarth.com

Attorneys for Defendants
Kaiser Foundation Hospitals,
Kaiser Foundation Health Plan Inc.,
Kaiser Foundation Health Plan of the Northwest,
Kaiser Foundation Health Plan of Washington,
Southern California Permanente Medical Group, and
The Permanente Medical Group, Inc.

305892906v.7

Defendants Kaiser Foundation Hospitals, Kaiser Foundation Health Plan Inc., Kaiser Foundation Health Plan of the Northwest, Kaiser Foundation Health Plan of Washington, Southern California Permanente Medical Group, and The Permanente Medical Group, Inc. (collectively "Defendants") submit this brief in support of their motion, pursuant to 28 U.S.C. section 1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, for an order transferring to the United States District Court for the Central District of California all pending federal actions for alleged violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and state law arising from claims that one or more of the Defendants failed to accommodate the religious beliefs of current or former employees in connection with the denial of requests for religious exemption to the Kaiser Permanente COVID-19 Vaccine Policy ("Policy").

## INTRODUCTION

Currently, there are sixteen district court actions ("Actions") that allege substantially identical claims against Defendants and affiliated defendant Kaiser Foundation Health Plan of Mid-Atlantic States, Inc. (together with Defendants, the "Affiliated Defendants"). As discussed below, the Actions arise from similar or identical factual allegations: each plaintiff was employed by one of the Affiliated Defendants; each plaintiff was subject to the Policy, which required, *inter alia*, the plaintiff to obtain a COVID-19 vaccine; each plaintiff had an alleged sincerely-held religious belief that prevented them from receiving the COVID-19 vaccine; each plaintiff asked for an exemption from the COVID-19 policy based on said religious belief; each plaintiff's request was denied; and each plaintiff was allegedly injured because their employment was either suspended or terminated after they remained unvaccinated in violation of the Policy. Each Action asserts claims under Title VII and/or corresponding state law. Further, each of the Actions involves the issue of whether providing an exemption to the Policy would have constituted an "undue

hardship" under Title VII. Such a determination is made in the overall context of an employer's business, which in each of the Actions, is the same.

Consolidation of the Actions for pre-trial purposes will serve the convenience of the parties and witnesses, promote just and efficient conduct of this litigation, and avoid inconsistent or duplicative rulings. Therefore, for the sake of judicial economy, these cases should be consolidated. Because the United States District Court for the Central District of California is the venue of the action with the first-filed operative complaint and is a relatively central location for virtually all the actions, it is the most appropriate venue for transfer.[1]

## FACTUAL BACKGROUND

### 1.  All Sixteen Actions Arise from the Following Factual Circumstances.

The Affiliated Defendants are separate and independent entities that work together under the trade name Kaiser Permanente ("Kaiser"), which is a vertically integrated managed care consortium that provides healthcare to over twelve million members. *See* Declaration of Derek Sumimoto in Support of Motion for Transfer of Actions. Kaiser is one of the largest nonprofit healthcare providers in the United States. *Id.* It is comprised of numerous separate and independent entities that cooperatively operate approximately forty hospitals and over seven hundred medical offices. *Id.* In total, these entities employ more than 300,000 people. *Id.*

---

[1] Two of the scheduled actions are pending in California—*Allbright* in the Central District and *Weiss* in the Northern District; eleven are pending in the District of Oregon (*Kreitel-Klumph, Backstrom, Bohlmann, Court, Davis, Dronov, Niemeyer, Bliss, Bulek, Marshall (Robert),* and *Marshall (Lisa)*), and one is pending in the Western District of Washington (*Pommier*). The two remaining actions are pending in the District of Maryland (*Mbadugha*) and the Eastern District of Virginia (*Tyiese*).

Defendants are also aware of at least one case currently pending in California Superior Court, which they anticipate removing to the Central District of California: *Nadia Palafox v. Kaiser Permanente Insurance Company, Kaiser Foundation Health Plan, Inc, Southern California Medical Group, Inc., and Southern California Permanente Medical Group* (California Superior Court, Orange County).

305892906v.7

Starting in early 2020 and continuing to the present, the Affiliated Defendants and their employees have been on the front lines of the COVID-19 pandemic. By mid-February 2020, Defendants' caregivers were treating people with confirmed COVID-19 cases in California, and in multiple states by March 2020, as the virus spread rapidly across the United States and the world. The fight against this deadly virus took a variety of forms including: local- and state-issued "shelter in place" orders intended to stop or slow the spread; public health orders issued by local, state, and federal government agencies that required essential workers to follow safety procedures; and massive investments into accelerating research on vaccine development. The guidance on how to respond to COVID-19 changed rapidly as scientists learned about the virus and as new tools, including vaccinations, became available. The first vaccine was available under Emergency Use Authorization on December 11, 2020. But it was not widely available at that time. *See FDA Approves First COVID-19 Vaccine*, Aug. 23, 2021, at 1, https://www.fda.gov/news-events/press-announcements/fda-approves-first-covid-19-vaccine. Months later, on August 23, 2021, the Food and Drug Administration granted formal approval to this vaccine.

On August 2, 2021, Kaiser announced it would require all employees and physicians to obtain a vaccination for COVID-19 as part of the consortium's ongoing effort to protect the health and safety of its workforce, members, patients, and communities. *See* Kaiser Permanente, Press Release, *Protecting health and safety through vaccination,* Aug. 2, 2021, at 1, https://about.kaiserpermanente.org/news/protecting-health-and-safety-through-vaccination. This announcement came in the midst of a dramatic increase in COVID-19 cases from the highly infectious delta variant and at a time where 97% to 99% of COVID-19 hospital admissions were from unvaccinated patients. *Id.* At the time, Kaiser had treated over 907,418 patients with COVID-19 and had administered over 6.8 million vaccine doses. *Id.* Kaiser determined that making vaccination mandatory was the most effective way to protect its employees, its patients, and the

communities it serves, and to comply with a myriad of local, state, and federal guidelines and regulations. *Id.*

Three days later, on August 5, 2021, the California Department of Public Health ("CDPH") ordered that "all health care workers must be vaccinated to reduce the chance of transmission to vulnerable populations." Cal. Dept. of Pub. Health, Health Care Worker Vaccine Requirement Order (Aug. 5, 2021) at p. 1. The CDPH determined that, "California is currently experiencing the fastest increase in COVID-19 cases during the entire pandemic" and that health care facilities are "particularly high-risk settings where COVID-19 outbreaks can have severe consequences for vulnerable populations" and "highly vulnerable patients, including elderly, chronically ill, critically ill, medically fragile, and disabled patients . . . [who] are at high risk of severe COVID-19 disease due to underlying health conditions, advanced age, or both." *Id.* The CDPH noted that "outbreaks in health care settings have frequently been traced to unvaccinated staff members." *Id.*

Three months later, the Centers for Medicare and Medicaid Services ("CMS") issued regulations that "require[d] most Medicare- and Medicaid-certified providers and suppliers to ensure that their staff are fully vaccinated for COVID-19." 86 Fed. Reg. 61,555-61,627, 61,568 (Nov. 5, 2021). The CMS also determined a vaccine mandate was necessary because, *inter alia*, COVID-19 was already "the deadliest disease in American history." *Id.* at 61,556 (noting available data likely "underestimate[s] the full impact" and did not account for "significant, detrimental effects of post-acute illness"). The regulations explain that "[v]accination against COVID-19 is a critical protective action for all individuals, especially health care workers." *Id.*, at 61,569. The most salient threat posed by unvaccinated healthcare workers is their proclivity to transmit the virus to patients, many of whom are at a high risk for a severe illness. *Id.*, at 61,558. Further, CMS found that patients were "refusing care from unvaccinated staff," which resulted in "individuals avoiding or forgoing health care due to fears of contracting COVID-19 from health care workers." *Id.* Finally, CMS

305892906v.7

determined that because "unvaccinated staff are at greater risk for infection, they also present a threat to health care operations—absenteeism due to COVID-related-exposures or illness." *Id.*, at 61,559.

Kaiser's vaccine mandate complied with applicable laws (including the CDPH Order and the CMS Regulation) because it, *inter alia*: required employees to receive the COVID-19 vaccine unless they obtained an approved exemption; created a process for employees to submit exemption requests; and evaluated such requests "in accordance with applicable federal law." 86 Fed. Reg. at 61,572. If an exemption request did not satisfy applicable law, it was denied and, after the CMS Regulation became effective, exemption requests were denied if they did not satisfy federal law as required by the CMS Regulation (which expressly preempted contradictory state laws and orders).[2] In many cases, employees were asked to provide additional information, which was permitted by applicable federal law. *See*, *e.g.*, *Chrysler Corp. v. Mann*, 561 F.2d 1282, 1286 (8th Cir. 1977) ("Where, as here, an employee is disinterested in informing his employer of his religious needs . . . he may forego the right to have his beliefs accommodated by his employer."); *Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149, 1155 n.5 (10th Cir. 2000) (stating, "[t]he [ADA] 'interactive process' rationale is equally applicable to the obligation to offer a reasonable accommodation to an individual whose religious beliefs conflict with an employment requirement"). Defendants evaluated each exemption request on a case-by-case basis.[3]

---

[2] To ensure the vaccine mandate was universally and uniformly implemented, the CMS Regulation expressly preempted state and local law. Specifically, it stated "[w]e intend, consistent with the Supremacy Clause of the United States Constitution, that this nationwide regulation preempts inconsistent State and local laws as applied to Medicare- and Medicaid-certified providers and suppliers." 86 Fed. Reg. at 61,568. As relevant here, the CMS Regulation expressly "preempts the applicability of any State or local law providing for exemptions to the extent such law provides ***broader exemptions than provided for by Federal law*** and are inconsistent with this IFC." *Id.* (emphasis added).

[3] Many of the requests contained similar or identical language. Upon investigation, Defendants discovered this language was being sold by third-party entities who were seeking to profit from manufactured controversy about the COVID-19 vaccination and many individuals were using social media to discuss ways to bypass the Policy.

Many requests were granted, but many did not meet the applicable legal standards and thus were denied. Where a request was denied, the employee was given multiple opportunities to comply with the Policy. Some unfortunately refused. Accordingly, as required by applicable policies, orders, and regulations, their employment was terminated.

### 2.  Plaintiffs Filed Sixteen Related Lawsuits.

Starting in January 2022, former employees began to file lawsuits relating to terminations arising from their refusal to comply with the Policy. Relevant to this Motion, the Actions here were each filed in 2023, and are listed below.

    a.  *Jace Allbright v. Southern California Permanente Medical Group, Inc.*, Case No. 5:23-cv-000022-JGB-KK (C.D. Cal.)[4]

        i  Counsel for Plaintiff: Ronald John Hackenberg, Jr. and Milton E. Matchak, of Pacific Justice Institute

        ii  Counsel for Defendant: Christian J. Rowley and Galen Paul Sallomi of Seyfarth Shaw, LLP

    b.  *Naomi Kreitel-Klumph v. Kaiser Foundation Hospitals*, Case No. 3:23-CV-000513-AN (D. Or.)[5]

        i  Counsel for Plaintiff: Ray D. Hacke of Pacific Justice Institute

        ii  Counsel for Defendant: Charlotte Hodde of Seyfarth Shaw, LLP

    c.  *Mimi Weiss v. The Permanente Medical Group, Inc.*, Case No. 3:23-cv-03490-RS (N.D. Cal.)

---

[4] Although docketed as *Jace Allbright v. Southern California Permanente Medical Group, Inc.*, Southern California Permanente Medical Group is not a corporation. It is a general medical partnership organized under California laws applicable to medical partnerships. The "Inc." is accordingly improperly appended to its name in the caption of this case.

[5] Although docketed as *Naomi Kreitel-Klumph v. Kaiser Foundation Hospitals*, Kaiser Foundation Hospitals is no longer a party to this action, with Kaiser Foundation Health Plan of the Northwest substituted as defendant pursuant to the Plaintiff's First Amended Complaint, filed on May 19, 2023.

305892906v.7

      i    Counsel for Plaintiff: Alan Jay Reinach and Jonathon S. Cherne of Church State Council

      ii   Counsel for Defendant: Christian J. Rowley and Sean T. Strauss of Seyfarth Shaw, LLP

d.   *Tressie Pommier v. Kaiser Foundation Health Plan of Washington*, Case No. 2:23-cv-01409-TSZ (W.D. Wash.)

      i    Counsel for Plaintiff: Edward C. Chung, of Chung Malhas & Mantel, PLLC

      ii   Counsel for Defendant: Christian J. Rowley, Helen McFarland, and Sean T. Strauss of Seyfarth Shaw, LLP

e.   *Tiffany Backstrom, Karen Carreira, Mariya Drozhzhin, Nadia Chubay, Tatyana Chuprova, and Sara Mikaele v. Kaiser Foundation Hospitals and Kaiser Foundation Health Plan of the Northwest*, Case No. 3:23-cv-01291-SI (D. Or.)

      i    Counsel for Plaintiff: Caroline Janzen of Janzen Legal Services, LLC

      ii   Counsel for Defendant: Charlotte Hodde, Christian J. Rowley, Galen Sallomi, and Mark A. Wagner of Seyfarth Shaw, LLP

f.   *Jennifer Bohlmann, Vasiliy Danilevskiy, Julie Green, Florin Havrisciuc, Nathan Leavitt, Inna Lebedev, Irina Litvinova, Luke Spradlin, Jeslyn Herinckx, Megan Metzler, Zoila Elston, Jonathan Crosby, Melanie Ellis, Ali Metcalfe, Tracey Johnson, Natalya Zholnerovich, and Michaela McClain, v. Kaiser Foundation Hospitals, Kaiser Foundation Health Plan of the Northwest, and Kaiser Foundation Health Plan,* Case No. 3:23-cv-01322-JR (D. Or.)

      i    Counsel for Plaintiff: Caroline Janzen of Janzen Legal Services, LLC

      ii   Counsel for Defendant: Charlotte Hodde, Christian J. Rowley, Galen Sallomi, and Mark A. Wagner of Seyfarth Shaw, LLP

 g. *Kendra Davis v. Northwest Permanente dba Permanente Medicine and Kaiser Permanente*, Case No. 3:23-cv-1437-SI (D. Or.)[6]

  i Counsel for Plaintiff: Caroline Janzen of Janzen Legal Services, LLC

  ii Counsel for Defendant: Charlotte Hodde, Christian J. Rowley, Galen Sallomi, and Mark A. Wagner of Seyfarth Shaw, LLP

 h. *Sonya Dronov, Stephanie Frank, and Eduard Bulek v. Kaiser Foundation Hospitals*, Case No. 3:23-cv-1496-SI (D. Or.)[7]

  i Counsel for Plaintiff: Caroline Janzen of Janzen Legal Services, LLC

  ii Counsel for Defendant: Charlotte Hodde, Christian J. Rowley, Galen Sallomi, and Mark A. Wagner of Seyfarth Shaw, LLP

 i. *Chinyere Mbadugha v. Kaiser Foundation Health Plan of Mid-Atlantic States, Inc.*, Case No. 8:22-cv-02712-DLB (D. Md.)

  i Counsel for Plaintiff: Joseph Mitterand Nde Fah of Fah Law Group PC

  ii Counsel for Defendant: Denise Elizabeth Giraudo, Adam R. Rosenthal, and Christopher R. Williams of Sheppard Mullin Richter & Hampton LLP

 j. *Michelle Niemeyer v NW Permanente dba Permanente Medicine and Kaiser Permanente*, Case No. 3:23-cv-00815-IM (D. Or.)[8]

---

[6] Although docketed as *Kendra Davis v. Northwest Permanente dba Permanente Medicine and Kaiser Permanente*, Northwest Permanente is no longer a party to this action, with Kaiser Foundation Health Plan of the Northwest having been substituted as defendant pursuant to the Plaintiff's First Amended Complaint, filed on October 23, 2023. Kaiser Permanente is a trade name and not a corporate entity. *See* KAISER PERMANENTE Trademark of Kaiser Foundation Health Plan, Inc. - Registration Number 5573574 - Serial Number 87680579 :: Justia Trademarks.

[7] Although docketed as *Sonya Dronov, Stephanie Frank, and Eduard Bulek v. Kaiser Foundation Hospitals*, Kaiser Foundation Health Plan of the Northwest was added as defendant pursuant to the Plaintiff's First Amended Consolidated Complaint, filed on October 23, 2023.

[8] Although docketed as *Michelle Niemeyer v NW Permanente dba Permanente Medicine and Kaiser Permanente*, the plaintiff was employed by Kaiser Foundation Health Plan of the Northwest.

       i    Counsel for Plaintiff: Caroline Janzen of Janzen Legal Services, LLC

       ii   Counsel for Defendant: Calon Nye Russell of Sheppard Mullin Richter & Hampton LLP

k. *Ellen Bliss v. Kaiser Foundation Hospitals*, Case No. 3:23-cv-00949-YY (D. Or.)[9]

       i    Counsel for Plaintiff: Caroline Janzen of Janzen Legal Services, LLC

       ii   Counsel for Defendant: Calon Nye Russell of Sheppard Mullin Richter & Hampton LLP

l. *Mariya A. Bulek v. Kaiser Foundation Hospitals*, Case No. 3:23-cv-01585-MO (D. Or.)

       i    Counsel for Plaintiff: Caroline Janzen of Janzen Legal Services, LLC

       ii   Counsel for Defendant: Calon Nye Russell of Sheppard Mullin Richter & Hampton LLP

m. *Neisha (Chinnery) Tyiese v. Kaiser Permanente*, Case No. 1:23-cv-01110-TSE-JFA (E.D. Va.) [10]

       i    Counsel for Plaintiff: Edward Scott Lloyd of Lloyd, Lemmon, & Hale, PLLC

       ii   Counsel for Defendant: Christopher Williams of Sheppard Mullin Richter & Hampton LLP

n. *Robert Marshall v. Permanente Dental Associates and Kaiser Foundation Health Plan of the Northwest*, Case No. 3:23-cv-01324-JR (D. Or.)[11]

       i    Counsel for Plaintiff: Caroline Janzen of Janzen Legal Services, LLC

---

[9] Although docketed as *Ellen Bliss v. Kaiser Foundation Hospitals*, Kaiser Foundation Hospitals is no longer a party to this action, with Kaiser Foundation Health Plan, Inc. having been substituted as defendant pursuant to the Plaintiff's First Amended Complaint, filed on October 13, 2023.

[10] Kaiser Permanente is a trade name and not a corporate entity. *See supra*, n. 5.

[11] Although docketed as *Robert Marshall v. Permanente Dental Associates and Kaiser Foundation Health Plan of the Northwest*, plaintiff's First Amended Complaint, filed on November 7, 2023, names only Kaiser Foundation Health Plan of the Northwest as a defendant.

      ii   Counsel for Defendant: Charlotte Hodde, Christian J. Rowley, Galen Sallomi, and Mark A. Wagner of Seyfarth Shaw, LLP

o.   *Cynthia Court v. Kaiser Foundation Health Plan Inc., Kaiser Foundation Health Plan of the Northwest, and Kaiser Foundation Hospitals*, Case No. 3:23-CV-1669-SI (D. Or.)

      i   Counsel for Plaintiff: Michael J. Ross

      ii   Counsel for Defendant: Charlotte Hodde, Christian J. Rowley, Galen Sallomi, and Mark A. Wagner of Seyfarth Shaw, LLP

p.   *Lisa Marshall v. Kaiser Foundation Health Plan of the Northwest dba Kaiser Permanente,* Case 3:23-cv-01675-HZ (D. Or.)

      i   Counsel for Plaintiff: Ray D. Hacke of Pacific Justice Institute

      ii   Counsel for Defendant: Charlotte Hodde, Christian J. Rowley, Galen Sallomi, and Mark A. Wagner of Seyfarth Shaw, LLP

As shown in Exhibit R in support of the Motion, the key factual allegations of each of the sixteen Actions are nearly identical. In particular, each of the Actions alleges that the plaintiff(s) had a religious belief that purportedly conflicted with the Policy, the plaintiff(s) requested a religious exemption from the Policy, the applicable Defendant denied the exemption request, and the plaintiff(s) were ultimately terminated when they remained unvaccinated in violation of the Policy. *See* Exhibit R.

And as shown in Exhibit S in support of the Motion, with the sole exception of *Bulek*, based on the foregoing facts, each of the Actions asserts one or more causes of action for religious discrimination in employment in violation of Title VII, as well as under corresponding state law. *Bulek*, in turn, asserts the same claim under the corresponding Oregon state statute, Or. Rev. Stat. § 659A.030, which courts uniformly construe in the same manner as Title VII.

11

In addition to the pending cases listed above, Defendants anticipate numerous additional similar cases will be filed in the next few months.[12]

## ARGUMENT

### A.    The Actions Should Be Consolidated

#### 1.  Standards for Consolidation or Coordination

The standards to be applied in considering a motion for transfer pursuant to 28 U.S.C. section 1407 are well known to this Panel. Transfer under section 1407 for consolidated pretrial proceedings is generally appropriate when the constituent cases involve "common questions of fact," when transfer will serve "the convenience of the parties and witnesses," and when consolidation will "promote the just and efficient conduct" of the actions to be transferred.[13] 28 U.S.C. § 1407. "Just and efficient" has a distinct meaning that applies to this situation—"to eliminate the potential for conflicting contemporaneous pretrial rulings by coordinate district and appellate courts in multi-district civil actions." *In re Methyl Tertiary Butyl Ether Prods. Liability Litig.*, MDL 1358, 2005 WL 106936, *5 (S.D.N.Y. Jan. 18, 2005) (*citing In re Plumbing Fixture Cases*, 298 F. Supp. 484, 491-92 (J.P.M.L. 1968)).

As the Panel often recognizes, transfer under Section 1407 "has the salutary effect of placing all actions in [a] docket before a single judge who can formulate a program that ensures the pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties." *In re Cook Medical, Inc., Pelvic Repair Sys. Prod.*

---

[12] On or about September 30, 2023, the EEOC issued Right to Sue letters to approximately 166 charging parties asserting similar claims based on similar alleged facts. The prospective plaintiffs in those matters must bring lawsuits on or before December 29, 2023. Further, there are an additional 30 similar Charges still pending before the EEOC with allegations that mirror those summarized in this Motion. Should any of these charging parties sue, their allegations will mirror those of the Plaintiffs in the cases identified herein.

[13] *See In re Starmed Health Personnel, Inc., Fair Labor Standards Act Litig.*, 317 F.Supp.2d 1380 (J.P.M.L. 2004); *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 293 F. Supp. 2d 1378, 1379 (J.P.M.L. 2003).

*Liability Litig.*, MDL No. 2440, 949 F.Supp. 2d 1373, 1375 (J.P.M.L. 2013); *see also Garcia v. Wachovia Bank, N.A. (In re Checking Account Overdraft Litig.)*, MDL No. 2036, 829 F. Supp. 2d 1316, 1322 (S.D. Fla. 2011) (quoting *In re Checking Account Overdraft Litig.*, 626 F. Supp. 2d 1333, 1335 (J.P.M.L. 2009)).

The goals of Section 1407 are achieved "through the coordination of discovery." *In re Zimmer Nexgen Knee Implant Prods. Liab. Litig.*, MDL No. 2272, 2012 WL 3582708, *3 (N.D. Ill. Aug. 16, 2012) (quoting *In re Orthopedic Bone Screw Prods. Liab. Litig.*, MDL No. 1014, 1997 WL 109595, at *2 (E.D. Pa. Mar. 7, 1997)). "Without it, 'conflicting pretrial discovery demands for documents and witnesses' might 'disrupt the functions of the Federal courts.'" *In re Phenylpropanolamine Prods. Liab. Litig.*, 460 F.3d 1217, 1230 (9th Cir. 2006) (quoting H.R. Rep. No. 1130, 90th Cong., 2d Sess. 1 (1968), *reprinted in* 1968 U.S.C.C.A.N. 1898, 1899)). Moreover, the alternative to coordinated pretrial proceedings may be "multiplied delay, confusion, conflict, inordinate expense and inefficiency." *Id.* (quoting *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 495 (J.P.M.L. 1968)).

Transfer of the Actions to a single jurisdiction for consolidated pretrial proceedings is appropriate under these standards.

### 2.   The Actions Involve Identical Factual Allegations

Each of the Actions arises from the same underlying circumstances, seeks redress for the same alleged injury, and brings the same causes of action under the same set of laws. To be clear, there are factual differences in each case (*e.g.*, each plaintiff had an individual religious belief and each request for accommodation was assessed on a case-by-case basis), but the underlying factual circumstances are identical and the common factual and legal issues predominate for the purposes of coordination.

As Exhibits R and S to the Motion demonstrate, all sixteen Actions arise from the same underlying factual circumstances and assert substantially similar claims. Specifically, all of the Actions except for *Bulek* assert causes of action for religious discrimination under Title VII arising out of the alleged failure of the respective defendants to accommodate the plaintiffs' religious beliefs by granting their requests for exemption from the Kaiser Permanente COVID-19 Vaccination Policy. *Bulek*, in turn, asserts the same claim under the corresponding Oregon state statute, Or. Rev. Stat. § 659A.030, which courts uniformly construe in the same manner as Title VII.[14] In each instance, the claims asserted center on the alleged religious beliefs of the respective plaintiffs, their requests for an exemption from the Policy, the respective defendants' denial of those exemption requests, and the alleged resultant injury to the plaintiffs.

Further, the duty of the respective defendants to afford the plaintiffs their requested accommodation—exemption from the Kaiser Policy—depends on the reasonableness of such requested exemptions and whether such accommodation would have constituted an "undue hardship" under Title VII. A determination of "undue hardship" under Title VII depends on whether the requested accommodation imposes a burden on an employer that "substantial in the overall context of an employer's business." *Groff v. DeJoy*, 600 U.S. 447, 4648 (2023). That overall context here is the same for each of the respective defendants—the operation of healthcare facilities and the provision of direct healthcare services to patients during the COVID-19 pandemic, and to do so in compliance with applicable legal mandates—including the CMS Regulation, which expressly "preempts the applicability of any State or local law providing for

---

[14] *See, e.g., Detwiler v. Mid-Columbia Med. Ctr.,* 3:22-cv-01306-JR, 2022 WL 19977290, at *3 (D. Or. Dec. 20, 2022) (courts analyze claims for religious discrimination under Or. Rev. Stat. § 659A.030 and Title VII together); *Brown v NW Permanente, P.C.*, Case No. 3:22-cv-986-SI, 2023 WL 6147178 (D. Or. Sept. 20, 2023) (courts analyze claims for religious discrimination under Or. Rev. Stat. § 659A.030 and Title VII together); *Pullom v. U.S. Bakery*, 477 F. Supp. 2d 1093, 1100 (D. Or. 2007) (noting that "O.R.S. 659A.030 is modeled after Title VII").

exemptions to the extent such law provides broader exemptions than provided for by Federal law and are inconsistent with this IFC."[15] 86 Fed. Reg. at 61,568 (emphasis added).

While there may not be common answers to common questions based on common facts as to liability in the Actions, a complete identity of common factual issues, or even a common outcome, is not a requirement for Section 1407 transfer. *See, In re Tribune Co. Fraudulent Conveyance Litig.*, 831 F. Supp. 2d 1371, 1371-1372 (J.P.M.L. 2011) ("Section 1407 does not require a complete identity or even a majority of common factual issues as a prerequisite to centralization") (*citing In re Denture Cream Prods. Liab. Litig.*, 624 F. Supp. 2d 1379 (J.P.M.L.2009). This is especially true in the early stages of litigation. *In Re: Uber Technologies, Inc., Passenger Sexual Assault Litig.*, MDL No. 3084, 2023 WL 6456588, * 1 (J.P.M.L. October 4, 2023) ("'Although individualized factual issues may arise in each action, such issues do not— especially at this early stage of litigation—negate the efficiencies to be gained by centralization.'") (quoting *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1379 (J.P.M.L. 2017)).

Indeed, in this case, Defendants do not seek Section 1407 consolidation for the purpose of obtaining a single outcome in the Actions because Defendants fully anticipate that the plaintiffs' claims will need to be resolved individually. Rather, Defendants seek to effect party and judicial savings and efficiencies by litigating common pretrial issues and coordinating all discovery in front of one court before the individual cases are referred back to their original, transferor districts. Any discovery unique to a particular action arising from differences among the actions can be scheduled by the transferee judge to proceed concurrently with common discovery, allowing the litigation to proceed expeditiously in both arenas. *See In re National Airlines*, 399 F. Supp. 1405, 1407 (J.P.M.L. 1975) (rejecting argument against transfer of Title VII discrimination actions that the differences in

---

[15] The CMS Regulation also preempts state and local laws that "forbid employers . . . from imposing vaccine requirements on employees." *Id.*, at 61,613.

the various complaints preclude Section 1407 treatment where the actions shared "common factual questions" and any unique discovery needs could be addressed by transferee judge).

### 3. Centralization of the Actions Will Serve the Convenience of the Parties and Witnesses and Promote Just and Efficient Conduct of This Litigation.

Transferring these cases for consolidated pretrial proceedings will serve "the convenience of the parties and witnesses." 28 U.S.C. § 1407. This is especially true here, where the potential for duplicative or redundant pretrial proceedings can be avoided, in large part, by a single judge formulating a pretrial program that will minimize witness inconvenience and control expenses for the parties involved. *In re Ephedra Products Liability Litig.*, MDL No. 1598, 314 F. Supp. 2d 1373, 1375 (J.P.M.L. 2004).

As noted above, the Actions center on nearly identical factual allegations and claims against seven affiliated entities by dozens of individual plaintiffs in six different judicial Districts before twelve different judges.[16] Because these Actions arise from the same underlying factual circumstances, each plaintiff will necessarily seek the same evidence in an attempt to prove their respective cases. Defendants anticipate that each plaintiff will seek to depose the same organizational witnesses for topics such as the creation and management of the COVID-19 Vaccination Policy. Each plaintiff likely will request that Petitioners produce the same set of documents (*e.g.*, common policies and documents regarding the creation and application of the Policy.) Each plaintiff will serve similar written discovery. Absent coordination, this discovery will occur in each of the sixteen Actions, potentially requiring Defendants to respond to dozens of

---

[16] *Allbright* is pending in the Central District of California. *Weiss* is pending in the Northern District of California. *Kreitel-Klumph*, *Backstrom*, *Bohlmann*, *Davis*, *Dronov*, *Niemeyer*, *Bliss*, *Bulek*, *Marshall (Robert)*, *Court*, and *Marshall (Lisa)* are each pending in the District of Oregon. *Pommier* is pending in the Western District of Washington, *Mbadugha* is pending in the District of Maryland, and *Tyiese* is pending in the Eastern District of Virginia.

Each of the Actions has been assigned to a different judge, except for *Backstrom, Davis, Dronov,* and *Court*, which are pending before the Honorable Michael H. Simon, and *Bohlmann* and *Marshall (Robert)*, which are pending before the Honorable Jolie A. Russo, both of the District of Oregon.

separate discovery requests. Additionally, if coordination were denied, there would be no way to ensure each plaintiff receives the same discovery (*e.g.*, as the twelve judges currently presiding over the individual Actions could issue different rulings on identical motions to compel), which could raise due process concerns. This excessive duplication of discovery is entirely unnecessary and would be substantially burdensome on the parties and Defendants' witnesses—who would be required to appear for multiple depositions and to answer similar questions about identical factual circumstances. It would be far more efficient and convenient for the parties, witnesses, and counsel to coordinate written discovery and depositions of both lay and expert witnesses, as well as to create a common repository of relevant documents, should this matter reach that stage.

Consolidation or coordination of the Actions also "will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407. Given the number of the Actions and of the plaintiffs represented therein, it is foreseeable that disputes will arise requiring judicial resolution; such as the scope of discoverable information, specific provisions of a protective order, or rulings on objections and responses to written discovery. Absent coordination, it will be necessary to seek input from as many as twelve different judges to address similar issues—which could result in different outcomes for similarly-situated plaintiffs and which would, as discussed below, result in an unnecessary drain on judicial resources.[17]

Finally, coordination of the Actions in one district court will conserve judicial resources and the parties' time and money by ensuring that they are not required to litigate on multiple fronts simultaneously. *See In re Cutter Labs., Inc. etc.*, 465 F. Supp. 1295, 1297 (J.P.M.L. 1979) (transferring MDL to Eastern District of New York, rejecting argument that certain claims should

---

[17] Further, as set forth in note 12, *supra*, Defendants anticipate numerous additional similar cases will be filed as a result of almost 200 Charges of Discrimination recently processed or still pending before the EEOC.

be excluded from transfer and noting that transferee judge has option of remanding certain cases to transferor court).

The foregoing benefits will be maximized here in light of the fact that each of the Actions are in the early stages of litigation. The operative complaint in each of the Actions was filed within the past year, and on information and belief, only the plaintiff in the *Allbright* matter has served written discovery on a defendant, responses to which are presently due on December 12, 2023. Written discovery has also been served on a plaintiff in only one action—*Allbright*.[18] No depositions have yet been noticed or conducted in any of the Actions. The Actions are related and capable of coordination at the most fundamental level, and it is in the interest of all parties to have coordination or consolidation determined now, before the Actions progress further and costs have been sunk.[19]

### B.   Transfer to the Central District of California Is Appropriate

Either the Central District of California or the District of Oregon would be an appropriate transferee forum for this litigation. However, this Panel generally favors coordination in the jurisdiction where the first complaint was filed.[20] Moreover, in making a determination as to which district should be the transferee court, the Panel may give particular consideration to the district

---

[18] The defendant in *Allbright* has received responses to its written discovery in that case.

[19] *See In re Sepracor Inc. Fair Labor Standards Act Litig.*, 629 F. Supp. 2d 1356 (J.P.M.L. 2009) (consolidating two actions each alleging failure to pay overtime under the FLSA); *In re Aon Corp. Wage & Hour Employment Practices Litig.*, 581 F. Supp. 2d 1376 (J.P.M.L. 2008) (consolidating two actions making similar assertions of failure to pay overtime under the FLSA and state laws).

[20] *See In re Cintas Corp. Overtime Pay Arb. Litig.*, 444 F. Supp. 2d 1353, 1355 (J.P.M.L. 2006) (transferring MDL to Northern District of California because "the district is where the first filed and significantly more advanced action is pending"); *In re Wells Fargo Home Mtge. Overtime Pay Litig.*, 435 F. Supp. 2d 1338, 1340 (J.P.M.L. 2006) (transferring MDL to Northern District of California because "the district is where the first filed and greater number of actions are already pending"); *In re GMAC Ins. Mgmt.*, 342 F. Supp. 2d 1357, 1358 (J.P.M.L. 2004) (transferring MDL to Middle District of Florida because "the first-filed and most advanced action is pending there"); *In re Wireless Tel.*, 293 F. Supp. 2d at 1380 (transferring MDL to Western District of Missouri because "the first-filed and furthest advanced actions . . . have been brought in that district").

where a defendant has principal offices.[21] Thus, the Central District of California is the most appropriate transferee court because the action with the first-filed operative complaint, *Allbright*, is pending there and because several of the Defendants have a substantial business presence there and can make witnesses available for depositions and hearing in that venue.[22] *See Allbright*, Ex. A, FAC ¶6.[23] Moreover, counsel for defendants in *Mbadugha*, *Niemeyer, Bliss,* and *Bulek* have indicated they do not oppose transfer of any related cases to the Central District of California.

Finally, coordination or consolidation would facilitate global settlement. Upon consolidation, settlement prospects might be increased through the use of bellwether trials. If consolidation is denied and the matters proceed on separate tracks, such devices are not available, and settlement becomes far less attractive to the defendants in these matters, as it makes a single global settlement nearly impossible.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Panel enter an Order consolidating the scheduled cases for pretrial proceedings and transfer them to the United States

---

[21] *See In re Sears, Roebuck & Co. Tools Mktg. & Sales Pracs. Litig.*, 381 F. Supp. 2d 1383, 1384 (J.P.M.L. 2005) (transferring MDL to Northern District of Illinois, because "Sears's corporate headquarters . . . are located there"); *In re Wireless Tel.*, 293 F. Supp. 2d at 1380 (transferring MDL to Western District of Missouri because "the district is within the metropolitan area in which is located the headquarters of a principal . . . defendant group, Sprint Corp. and its affiliates"); *In re Air Crash Disaster at Sioux City*, 128 F.R.D. 131, 132 (J.P.M.L. 1989) (transferring MDL to Northern District of Illinois because defendant's main office is located there); *In re National Airlines*, 399 F. Supp. at 1407 (transferring MDL to Southern District of Florida because "National is a Florida-based corporation").

[22] The Permanente Medical Group ("TPMG") is based in Northern California and Southern California Permanente Medical Group ("SCPMG") is based in Southern California. In general, neither entity conducts business operations where the other entity operates. Accordingly, lawsuits against TPMG are generally venued in Northern California and lawsuits against SCPMG are generally venued in Southern California. For the purposes of this Motion only, TPMG and the other Defendants are amenable to proceeding in the Central District of California.

[23] In addition to *Allbright*, upon its anticipated removal, *Palafox* will also be pending in the Central District of California.

305892906v.7

District Court for the Central District of California for administration pursuant to 28 U.S.C. section

1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation.

December 5, 2023

SEYFARTH SHAW LLP

By    /s/ Christian J. Rowley
    Christian J. Rowley
    Sean T. Strauss
    560 Mission Street, 31st Floor
    San Francisco, California 94105
    Telephone: (415) 397-2823
    Facsimile: (415) 397-8549
    crowley@seyfarth.com
    sstrauss@seyfarth.com

    Mark A. Wagner
    975 F Street, N.W.
    Washington, DC 20004-1454
    Telephone: (202) 463-2400
    Facsimile: (202) 828-5393
    mwagner@seyfarth.com

    Attorneys for Defendants
    Kaiser Foundation Hospitals,
    Kaiser Foundation Health Plan Inc.,
    Kaiser Foundation Health Plan of the Northwest,
    Kaiser Foundation Health Plan of Washington,
    Southern California Permanente Medical Group, and
    The Permanente Medical Group, Inc.

305892906v.7